**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAYNE G. SAMET, | ) |
| Plaintiff, | ) Case No.: 2:18-cv-00906-GMN-NJK |
| vs. | ) |
| | ) **ORDER** |
| BAYVIEW LOAN SERVICING, LLC, *et al.*, | ) |
| Defendants. | ) |

Pending before the Court is Plaintiff Jayne Samet's ("Plaintiff's") Motion to Dismiss, (ECF No. 36). Defendant Bayview Loan Servicing, LLC ("Defendant") filed a Response, (ECF No. 41), and Plaintiff filed a Reply, (ECF No. 44).

Also pending before the Court are Defendant's Motion to Enforcement Settlement, (ECF No. 42), and Motion for Sanctions, (ECF No. 43). Plaintiff filed Responses, (ECF Nos. 48, 49), and Defendant filed a Reply, (ECF No. 51).

For the reasons discussed below, the Court **GRANTS in part** Plaintiff's Motion to Dismiss, **GRANTS** Defendant's Motion to Enforce Settlement, and **DENIES** Defendant's Motion for Sanctions.

## I. BACKGROUND

Plaintiff filed this action on May 18, 2018, alleging Defendant inaccurately informed credit reporting agencies that Plaintiff owed a "past due" debt of over $100,000 based on a loan to purchase real property located at 2331 Peaceful Sky Drive, Henderson, NV 89044 (the "Property"). (Compl. ¶¶ 19, 39–61, ECF No. 1). To support Plaintiff's contention that she does not owe any past-due debt related to the Property, she alleges that she surrendered her Property to BAC Home Loans Servicing, LLC ("BAC") in 2014 pursuant to a Confirmation Order in

bankruptcy court, thereby discharging the debt. (*Id.* ¶ 19). Defendant later became BAC's successor in interest. (*Id.* ¶¶ 19–20). Despite the earlier Confirmation Order, Plaintiff contends that Defendant continued to report the debt on the Property as past-due and owing. (*Id.* ¶¶ 20, 23–24, 39). Plaintiff thus argues that Defendant's inaccurate reporting of debt violated the Fair Credit Reporting Act, 15 U.S.C. § 1681. *et seq*. (*Id.* ¶¶ 73–76).

On September 12, 2018, Plaintiff filed a Notice of Settlement in this case stating that the parties "have reached a tentative settlement." (Not. Settlement 1:24–26, ECF No. 27). Defendant alleges that, as part of the settlement agreement, Plaintiff agreed to not contest foreclosure on the Property. (Def.'s Resp. to Mot. to Dismiss ("Def.'s Resp.") 3:1–4, ECF No. 41). However, Defendant's counsel later discovered that Plaintiff applied for a modification of her loan on the Property. (*Id.* 3:15–22); (Emails re: Application for Loan Modification ("Loan Emails") at 1, Ex. B to Mot. Enforce Settlement ("MES"), ECF No. 42-2). Plaintiff also filed a Petition for Foreclosure Mediation Assistance in state court on October 19, 2018, seeking an alternative to foreclosure of the Property; and the state court set a mediation for March 5, 2019. (MES 3:23–4:1–5); (*see also* Pet. Foreclosure Mediation Assistance, Ex. C. to MES., ECF No. 42-3).

On March 11, 2019, Plaintiff filed a Motion to Dismiss Defendant with prejudice, (ECF No. 36). Defendant opposes the Motion only to the extent that dismissal would occur without "holding [Plaintiff] to the terms of the settlement agreement." (Resp. 2:16–19, ECF No. 41). Defendant thus seeks enforcement of the settlement alongside sanctions against Plaintiff. (MES, ECF Nos. 42); (Mot. Sanctions, ECF No. 43).

## II. LEGAL STANDARD

### A. Motion to Enforce Settlement

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, the district court may enforce only

*complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). "Whether the parties *intended* only to be bound upon the execution of a written, signed agreement is a factual issue." *Id*. at 890-91. "In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its *material terms*." *Id*. at 891. "Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (footnote omitted).

Under Nevada law, "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *Id*. (footnote omitted). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id*. (footnote omitted). "A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id*. (footnote omitted). Ordinarily, "[w]here a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect." *Micheletti v. Fugitt*, 134 P.2d 99, 104 (Nev. 1943).

"In the case of a settlement agreement, a court cannot compel compliance when material terms remain uncertain." *May*, 119 P.3d at 1257 (footnote omitted). "The court must be able to ascertain what is required of the respective parties." *Id*. (footnote omitted). "[T]he question of whether a contract exists is one of fact." *Id*. A settlement contract is formed "when the parties have agreed to its material terms"; accordingly, a party's refusal to later execute a written settlement agreement containing the agreed upon terms "does not render the settlement agreement invalid." *Id.* at 1256.

///

///

**B. Motion for Sanctions**

District courts have inherent power to sanction a party for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The court may only issue sanctions under its inherent power upon finding "bad faith or conduct tantamount to bad faith." *Id.* at 994. Bad faith, or conduct tantamount to bad faith, encompasses "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* Upon a finding of bad faith, the decision to issue sanctions is within the court's discretion. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

## III. DISCUSSION

The Court's below discussion first addresses whether the parties executed an enforceable settlement contract. Because the Court finds that they did, the Court then addresses Defendant's request for sanctions.

**A. Motion to Enforce Settlement**

Defendant argues that the parties reached an enforceable settlement contract because Plaintiff accepted Defendant's offer, which was supported by consideration, and contained all the requisite material terms. (MES 5:1–8, ECF No. 42). Plaintiff responds with the following arguments: (1) there is no enforceable settlement contract because it was not executed in a writing; (2) the agreement lacks material terms because there was no choice of law provision; and (3) the emails between the parties show that they did not agree upon the meaning of a material term: what constitutes contestation of foreclosure. (Resp. to MES 2:15–22, 4:8–22, ECF No. 48). Plaintiff also argues that, even if there is an enforceable settlement contract, the Plaintiff's availment of foreclosure mediation did not violate the agreement because the proceedings did not "contest" foreclosure. (*Id.* 3:10–4:7).

In support of its position, Defendant provides an exchange of emails between the parties' counsels. (*See* Emails Agreeing to Settlement Terms ("Settlement Emails"), Ex. A to MES, ECF Nos. 42-1, 40-1); (*see also* Loan Emails, Ex. B to Def.'s MES, ECF No. 42-2). These emails show that the parties began settlement negotiations via email on September 11, 2018. (Settlement Emails at 2–6) ("Bayview offers each of your clients $1000 (total $2000)."). After Plaintiff's counsel rejected the initial offer via counteroffer, (*id.*), Defendant increased its monetary offer and stated that "[it] would also like the settlement agreement to confirm your clients will not attempt to contest foreclosure to the extent not already part of the confirmation order." (*Id.* at 4). After several more rounds of negotiation culminated in the parties agreeing to the monetary term of $7,000, Defendant still sought to have Plaintiff agree not to contest foreclosure. (*Id.* at 2–5) ("When you get a chance let me know about the consent to foreclose term. But for now, as discussed, i'll [sic] let my client know the deposition is off."). Plaintiff's counsel then informed Defendant on September 12, 2018, "I'm advised that the language you suggested won't be a bar to settlement. So we'll get notices of settlement on, and we'll wait for the SA. Glad we could work these cases out." (*Id.* at 1). That day, the parties filed the Notice of Settlement indicating that the parties reached a tentative agreement. (Not. Settlement, ECF No. 27).

On November 1, 2018, Plaintiff's counsel reached out to Defendant's counsel saying, "We settled [this case] on 9/12/2018. Approximately 50 days have passed since this matter was settled. Please forward our office your client's proposed form settlement agreement for the Plaintiff to review and sign." (Loan Emails at 2). In response, Defendant's counsel explained, "As part of the settlement agreement, they were to agree to consent to foreclosure. After Mr. Clark and I reached that agreement, we learned that your clients were simultaneously seeking an agreement to modify their loan . . . . the intention to enter an agreement to modify the loan is inconsistent with the agreement to foreclose." (*Id.* at 1).

Based on Defendant's provided evidence, the Court concludes that the parties reached an enforceable settlement contract despite the agreement not being executed in a signed writing. Defendant made an ascertainable settlement offer: $7,000 in exchange for dismissal with prejudice and an agreement not to contest foreclosure. (*See* Settlement Emails at 1–2); (*see also* Not. Settlement) (explaining that dismissal with prejudice was a term of the settlement contract). Plaintiff accepted the offer. (*See* Settlement Emails at 1). The promised exchange supplied sufficient consideration to make the contract enforceable. The negotiations indicate the agreement had only three material terms: the monetary offer to Plaintiff, the agreement to dismiss the case with prejudice, and an agreement not to contest Defendant's foreclosure of the Property. (*See id.*); (*see also* Not. Settlement).

Ordinarily, the Court would hesitate to enforce an agreement the parties described as "tentative" in the Notice of Settlement. (*See* Not. Settlement, ECF No. 27). However, the subsequent communications between the parties' counsel persuade the Court that any outstanding issues regarding settlement did not concern material terms of the agreement. The emails indicate Plaintiff intended to be bound by the agreement prior to filing the Notice of Settlement because Plaintiff's counsel confirmed that it believed that the matter was "settled" on the September 12, 2018—the date of Plaintiff's counsel's acceptance email—and Plaintiff merely requested a written settlement agreement memorializing the contract. (*See* Loan Emails at 2) (explaining that counsel considered the case settled as of September 12, 2018); (*see also* Settlement Emails at 1 and Notice of Settlement) (describing the material terms of the agreement); *see, e.g.*, *Micheletti*, 134 P.2d at 104 ("[w]here a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect."). Plaintiff provides no evidence that the parties intended to be bound by the agreement only after its reduction to a signed writing.

The parties' omission of a choice of law provision in the contract is not fatal. A choice of law provision is optional; it is not a material term unless the parties condition the agreement on its inclusion. *See* 15 Corbin on Contracts § 83.9 (2019) (explaining that parties often agree to choice of law provisions, but that state law will fill the gap in the absence of an agreement). There is no indication that a choice of law provision was a material term for settlement here because the parties never negotiated for its inclusion.

The Court concludes that the parties agreed upon the meaning of the provision consenting not to "contest" foreclosure. Plaintiff argues that "contest" is ambiguous because the Black's Law Dictionary definition of "contested case" is one that is "opposed by another person or interested party." (Resp. to MES, 3:10–4:7). She argues that because mediation does not necessitate opposition, the state court proceedings did not contest foreclosure. (Id.) But Plaintiff's use of the "contested case" definition does not persuade the Court that the parties did not agree upon the meaning of "contest." In Defendant's final email preceding Plaintiff's acceptance, Defendant indicated that the term required Plaintiff to "consent to foreclosure." (Settlement Emails at 1). Plaintiff's agreement to consent to foreclosure correspondingly means Plaintiff would not ensnare Defendant in a proceeding that has the goal of seeking an alternative to foreclosure. Likewise, seeking to modify the loan upon which Defendant sought to foreclose necessarily contests Defendant's right to do so.

Accordingly, the parties have an enforceable contract, which the Court has the power to enforce as a basis for dismissal. Pursuant to its authority to enforce the contract, the Court orders Plaintiff to refrain from taking any actions that frustrate Defendant's right to foreclose on the Property, including seeking alternatives to foreclosure through mediation or modification of her loan. With this condition set, the Court finds that Plaintiff's request for dismissal of Defendant with prejudice is appropriate pursuant to Federal Rule of Civil Procedure 42(a)(2).

### B. Motion for Sanctions

Defendant argues that Plaintiff acted in bad faith by taking conflicting positions in this case and in state court regarding the status of the Property, by filing this (allegedly frivolous) case, and by seeking and receiving attorney's fees in the state court mediation. (Mot. Sanctions 6:20–28, ECF No. 43). Plaintiff contends that Defendant's argument is conclusory and fails to allege any facts demonstrating bad faith. (Resp. to Mot. for Sanctions, 6:12–7:2, ECF No. 52).

The Court agrees that Defendant does not satisfy its burden to show Plaintiff acted in bad faith. The Court therefore declines to award sanctions against Plaintiff.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Enforce Settlement, (ECF No. 42), is **GRANTED**. Plaintiff must comply with the parties' settlement by refraining from acting inconsistently with the agreement to consent to foreclosure of the Property. The Court finds that seeking modification of the loan encumbering the property, or seeking alternatives to foreclosure through mediation in the Nevada Foreclosure Mediation Program, are inconsistent with the parties' settlement contract.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss, (ECF No. 36), is **GRANTED in part.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions, (ECF No. 43), is **DENIED**.

The Clerk of Court shall close the case.

**DATED** this __30__ day of December, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court